WILLIAM A. DAVENPORT *vs.* LORENZO L. KING & another.

Franklin.    September 17, 1930. — October 3, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Equity Pleading and Practice,* Master: findings of fact; Appeal.  *Mortgage,* Of real estate: surplus after foreclosure sale.

In a suit in equity by a second mortgagee of real estate to determine the ownership of the proceeds of a sale in foreclosure of a first mortgage, left unexpended after satisfaction of its provisions, findings by a master, in a report which did not include a report of the evidence before him, that "On all the evidence," the first mortgage was given by the mortgagors to the father of one of them, a defendant who claimed the surplus proceeds, and a third person, who afterwards assigned his rights therein to the defendant father, "to secure them and each of them against loss on account of their endorsement of notes of the mortgagors at" a bank which afterwards took an assignment of that mortgage to secure it on all notes of the mortgagors on which the defendant father then was or should become liable; and that such first mortgage "was not given to secure the defendant" father "for materials and labor or for money furnished" and that "this was the understanding of all parties at the time the mortgage was given to the plaintiff," the second mortgagee, were not plainly wrong because necessarily inconsistent with further findings in the report that the defendant, father of one of the mortgagors, had furnished lumber and work in connection with the construction of a garage in which the mortgagors were interested; that he and his wife, not the other mortgagee in the first mortgage, had furnished a sum of money for the same purposes, and that the consideration recited in the first mortgage was $5,000 and the condition was "to pay $5,000 on demand with interest at six per cent, and to pay taxes, and so forth — customary mortgage conditions," and that at the time it was given the mortgagees were liable as indorsers on notes of the mortgagors at the bank to the amount of $2,000 only, though later they became so liable to the amount of $5,000.
Because of the above described findings of the master, a claim by the defendant father that he, instead of the defendant second mortgagee, was entitled to the proceeds of the sale in foreclosure of the first mortgage after satisfaction of the claim which was secured by the assignment of that mortgage to the bank, properly was disallowed.

BILL IN EQUITY, filed in the Superior Court against Lorenzo L. King and The Shelburne Falls National Bank, on May 29, 1929, described in the opinion.

The suit was referred to a master. Material facts found by him are stated in the opinion. Decrees described in the opinion were entered by order of *Hanify,* J. The defendant King appealed.

*H. Sherman,* for the defendant King.

*W. A. Davenport,* (*W. L. Davenport* with him,) for the plaintiff.

FIELD, J. This bill in equity was brought by the second mortgagee of certain real estate in Buckland against the assignees of the first mortgage thereon to determine the ownership of $2,316.60, a part of the proceeds of a foreclosure sale under the first mortgage, and for other relief.

The case was referred to a master who found among others the following facts: Forrest R. King, son of the defendant, Lorenzo L. King, and Harold S. Kilgore in 1921 bought a parcel of land in Buckland and the next year erected thereon a garage which for a time they operated as a partnership under the name of Kilgore & King and later conveyed to the White Mission Supply Company, a corporation, though they continued to be the active managers of the business. By a mortgage deed dated October 16, 1922, Harold S. Kilgore and Forrest R. King mortgaged the property to the defendant King and Allen F. Smith. This mortgage was given to Smith "to secure him for his indorsement on paper of the mortgagors." On August 28, 1924, the mortgagees assigned the mortgage to the defendant bank and Smith was relieved by the bank from his liability as indorser and on September 30, 1924, Smith assigned his interest in the mortgage to the defendant King. The assignment to the bank "while absolute in form, was in fact to secure the bank for all notes of Kilgore & King and of White Mission Supply Company on which the defendant King then was, or should become, liable." On November 30, 1925, the plaintiff took from the White Mission Supply Company a mortgage for $5,000 on the property, indorsed the note of the corporation for that amount, discounted it, and used the proceeds in paying creditors of the corporation. Thereafter the defendant bank foreclosed its mortgage and sold the property under

the power of sale therein contained, employing the plaintiff for the purpose. The amount then due the bank, on account of indorsements of the defendant King and for the expenses of foreclosure, was $2,683.40. The plaintiff bought the property at the foreclosure sale for $5,000, paid the bank $2,683.40 and retained $2,316.60, giving the bank "a receipt therefor acknowledging receipt of said sum to be applied on his mortgage." Thereafter, the defendant King made demand upon the defendant bank for this amount, the bank advised the plaintiff of this demand and the plaintiff gave to the bank "his note signed by his wife" therefor and "an agreement that if said sum should appear to be due . . . [the defendant King] . . . [he] would save said bank harmless from all loss on account thereof."

The master reached this conclusion: "On all the evidence, I find that the mortgage of October 16, 1922, given by Harold S. Kilgore and Forrest R. King to Lorenzo L. King and Allen F. Smith, was given to secure them and each of them against loss on account of their endorsement of notes of the mortgagors at the Shelburne Falls National Bank and that it was not given to secure the defendant King for materials and labor or for money furnished. I find this was the understanding of all parties at the time the mortgage was given to the plaintiff. I find the plaintiff is entitled to the surplus of $2,316.60 received as a result of the foreclosure sale."

To this conclusion of the master the defendant King objected on the ground that it was "not warranted by the facts as set forth in the master's report." However, an interlocutory decree was entered confirming the report and later a final decree reciting that "the surplus held by the defendant, the Shelburne Falls National Bank, belongs to the plaintiff," ordering that defendant "to pay the same by delivering to the plaintiff his note signed by his wife . . . for the sum of $2,316.60," and enjoining the defendant bank from bringing any action against the plaintiff on this note, and the defendant King from bringing any action against the defendant bank or the plaintiff "on the subject

matter contained in plaintiff's bill." From the final decree the defendant King appealed. The evidence is not reported.

The defendant King attacks the decree solely on the ground that it is based upon the conclusion of the master as to the purpose for which the mortgage of October 16, 1922, was given which was erroneous. He contends that this mortgage was given not only to secure the mortgagees against loss on account of the indorsement of the notes of the mortgagors, but also for money, lumber, and work furnished to them and, therefore, that the proceeds of the foreclosure sale in excess of the amount due the bank at the time of the sale belong to him, instead of to the plaintiff.

The master's conclusion was based "On all the evidence." It does not purport to be merely an inference from other findings. In the absence of the evidence, therefore, this conclusion must stand unless on the face of the report it is inconsistent with other findings and plainly wrong. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. *Simpkins* v. *Old Colony Trust Co.* 254 Mass. 576, 580, 583. *Sousa* v. *Manta,* 267 Mass. 246. This does not appear. It was found that the defendant King furnished lumber and performed work in connection with the erection of the garage, the fair value of which was $1,064, though it was found also that he "never rendered any bill for lumber or for his labor," "kept no account of the quantity of lumber or of the number of days he worked" and "never demanded from Kilgore & King or from White Mission Supply Company payment for lumber or for labor." There were findings from which it might be inferred that the defendant King and his wife furnished to Forrest R. King and Harold S. Kilgore $3,650 in money, $650 of which came from a joint account in a savings bank in the names of the defendant King and his wife, and $2,900 of which was borrowed by her on the security of her homestead. Moreover, the consideration recited in the first mortgage was $5,000 and the condition was "to pay $5,000 on demand with interest at six per cent, and to pay taxes, and so forth; customary mortgage conditions," and at the time it was given the mortgagees were liable as indorsers

on notes of the mortgagors at the defendant bank to the amount of $2,000 only, though later they became so liable to the amount of $5,000. But these findings, especially in view of the fact that the mortgage was given not only to the defendant King but also to Allen F. Smith, and in his case to secure him against loss on account of his indorsements, and of the further fact that the wife of the defendant King, though apparently furnishing a considerable part of the money, was not named as a mortgagee, are not inconsistent with the conclusion that the mortgage "was not given to secure the defendant King for materials and labor or for money furnished."

Since the contention of the defendant King is without merit the final decree must be affirmed, with costs as against him.

*Ordered accordingly.*